UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIM TREVINO,

|                        |                         |
|------------------------|-------------------------|
| Plaintiff,             | Case Number 14-14376    |
| v.                     | Honorable David M. Lawson |
|                        | Magistrate Judge Stephanie Dawkins Davis |

JANE KELLY, BURKE CASTLEBERRY,
VILLAGE OF BLISSFIELD, JOHN DOE
ESCOTT, JOHN DOE RINEY,
and JACOB PIFER,

Defendants.
_____/

**OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION,
GRANTING MOTION TO DISMISS BY DEFENDANT CASTLEBERRY, DENYING
MOTION TO DISMISS BY DEFENDANT PIFER, GRANTING DEFENDANT
RINEY'S MOTION FOR SUMMARY JUDGMENT, DISMISSING CERTAIN
CLAIMS AND PARTIES, AND CONTINUING ORDER OF REFERENCE**

Plaintiff Tim Trevino, a Michigan prisoner representing himself, filed this lawsuit under 42

U.S.C. § 1983 against various police personnel and a county assistant prosecutor involved in his

arrest for the crimes that led to his present incarceration. The Court referred the case to United

States Magistrate Judge Stephanie Dawkins Davis under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich.

LR 72.1(b)(3) to conduct pretrial proceedings. Thereafter, assistant prosecutor Burke Castleberry

and police officer Jacob Pifer filed a motion to dismiss and defendant John Doe Riney, a City of

Adrian police officer, filed a motion to dismiss. Judge Davis filed a report on February 14, 2017

recommending that defendants Castleberry and Pifer's motion to dismiss be granted, the claims of

excessive force against all the defendants be dismissed with prejudice, and all remaining claims be

dismissed without prejudice under the authority of *Heck v. Humphrey*, 512 U.S. 477 (1994). The

plaintiff filed timely objections to the report and recommendation, and the matter is now before the

Court for fresh review.

I.

A.

The plaintiff has made a number of attempts at filing a complaint that adequately describes his grievances. He has made allegations about seemingly unrelated events, and his later pleadings have not done much to alleviate the confusion. In his original complaint, Trevino makes reference to an incident that occurred March 2006, when he was accused of criminal sexual conduct, and the charges against him were dismissed "with prejudice." That allegation is followed by a statement that on August 24, 2012, Blissfield Police Chief Jane Kelly entered his home without a valid search warrant. He alleges that Kelly conducted an unlawful "strip search" of him. He then says that Kelly sent two narcotics agents to his home in the middle of the night, they forcibly entered his home, and they shot him with a taser. He alleged that these actions violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

Trevino noted that at the time that he filed his complaint, he did not know the names of the narcotics officers, but he believed he would learn their identities through discovery. It appears that he also intended to name the City of Blissfield as a defendant. He made references to failure to train and supervise the defendants, and he sought relief from four defendants, not three. *Id*. at 4-5. However, the city was never listed as a party on the docket.

On April 27, 2015, Trevino filed a motion for discovery seeking the names of the unnamed narcotics officers from defendant Kelly. Magistrate Judge Michael Hluchaniuk, previously assigned to the case before his retirement, ordered a response, and defendant Kelly provided a copy of an incident report filed by defendant Jacob Pifer. Trevino subsequently filed a motion to amend the

complaint to include defendant Burke Castleberry, an assistant prosecuting attorney, and investigators Escott and Riney, and Jacob Pifer. He also filed a first amended complaint separately.

In the first amended complaint, Trevino named the above individuals and the Village of Blissfield as defendants. The Village of Blissfield, however, was again not added to the caption. The first amended complaint largely tracks the original complaint, but it appears that a page is either missing or the plaintiff intended only to supplement his original complaint. All of the detailed allegations concerning the events of August 24, 2012 are missing from the first amended complaint. That pleading states:

> Each Defendant in their [sic] Individual Capasity [sic] did Violate Plaintiff[']s 4th; 5th; 8th; and 14th Amendment Civil Rights by Illegally Arresting and seizing Plaintiff of his Liberty where they all came into Plaintiff[']s Home without a Search Warrant; tased Plaintiff causing Personal Injury emotional distress as sustained by the attached Evidence that they could not have persued [sic] the matter at all.

First Amended Compl. at 3. The plaintiff also filed a second amended complaint, making a small date correction. Judge Hluchaniuk granted Trevino's motion to amend and directed him to file a single, complete, amended complaint by October 1, 2015. No amended complaint was filed by that date.

On January 5, 2016, this case was reassigned to Magistrate Judge Davis. On April 6, 2016, the plaintiff filed a motion asking the Court to ensure that the defendants were served with his amended complaint. In his motion, he represented that he sent a letter to the Clerk of the Court asking for service to be made on the defendants and asserting that he complied with Judge Hluchaniuk's order directing him to file an amended complaint. He said that he complied when he sent copies of the amended complaint to the Clerk at the same time that he filed his motion to amend. It appears that the plaintiff did not understand that the magistrate judge was directing him

-3-

to file a single amended complaint that incorporated the first and second amended complaints. Magistrate Judge Davis subsequently entered an order observing that no amended complaint had been filed and deemed the first amended complaint as the operative complaint. She also noted that in order to serve the defendants, Trevino was required to provide within 30 days addresses for service. Trevino subsequently filed another amended complaint that included the addresses of the defendants. In response to the first amended complaint, defendants Castleberry and Pifer filed a motion to dismiss, defendants Kelly and Riney filed an answer to the first amended complaint, and defendant Escott filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) arguing that he was not served properly. Defendant Escott was eventually served properly and the magistrate judge dismissed his motion as moot. Defendant Escott filed an answer to the amended complaint, but did not file any further motions. Defendant Riney filed a motion for summary judgment.

None of the plaintiff's efforts to amend his pleadings sheds much light on the facts of his case. The magistrate judge's report contains only sparse references to the facts and no detail. To learn the story, one must review defendant Riney's motion for summary judgment and the exhibits attached to his supporting brief. One exhibit is the plaintiff's deposition, and another is a series of police reports concerning the crimes for which Trevino stands convicted, which are criminal sexual conduct.

As it turns out, Trevino's grievances stem from three separate incidents. It appears that he indeed was accused of sexual misconduct in 2006, and his accuser was his wife's daughter, Angel Valdez, who then was a minor. Valdez signed an affidavit recanting her allegations, and the charges against Trevino were dismissed by an order *nolle prosequi*. But Valdez returned to Blissfield as an

adult in 2012 and asked the police to reopen the case.  According to the police report, her affidavit of recantation was procured under suspicious circumstances.

Village of Blissfield police chief Jane Kelly took up the investigation in 2012.  On August 24, 2012, Kelly came to Trevino's house to question him about the 2006 incident.  When Kelly came to the house, she did not have a warrant.  That appears to be the source of Trevino's first allegation that Kelly made a warrantless entry into his home.  But Trevino testified at his deposition that Kelly came in the afternoon, knocked, and he let her in.  Trevino explained that he had barking dogs in the house, so after a few minutes Kelly asked if they could talk outside.  So they went to his yard and sat in lawn chairs on the patio.  Trevino testified that Kelly was very insistent about questioning him.  She wanted to "strip search" him, but really she wanted him to take off his shirt to see if he had a scar on his chest.  He cooperated, because Kelly told him he would have to answer questions or she would arrest him for obstruction of justice.  Trevino said that he was embarrassed because neighbors were watching.  The encounter came to an abrupt halt, according to Trevino, when he showed Kelly the documents confirming that the 2006 case was dismissed.  Kelly then "kind of stopped everything."  Trevino asked Kelly for her badge number, but she said she did not have to tell him, and said that she was the chief of police.  Then she left.

Another "strip search" incident occurred on January 15, 2013.  Trevino was served with a search warrant a few days earlier directing him to come to a walk-in clinic so photographs could be taken of his body.  Trevino testified that the search was conducted without a warrant, but the documents attached to defendant Riney's summary judgment motion establish otherwise.  Kelly was present at the clinic with a nurse.  According to the police report, Trevino reluctantly pulled up his shirt, and police personnel saw scars on his shoulder and abdomen; photographs were taken.

A felony warrant was issued on January 30, 2013 charging Trevino with several counts of criminal sexual conduct.  The victim was Angel Valdez.

Trevino was arrested on the felony warrant on February 22, 2013.  The police report states that on the day of the arrest, officers knocked on the door of Trevino's home.  They heard a male voice.  They did not enter, but called assistant prosecutor Castleberry, who advised them to get a search warrant before entering the home to serve the arrest warrant. Police officer Jacob Pifer prepared the search warrant application, Castleberry reviewed it, and state court district Judge Greg Iddings signed the warrant.

The police then entered Trevino's home and found him in bed.  Trevino says he was sleeping on his back, and when he sat up he was shot in the chest with a taser.  The police report states that the officers ordered Trevino to stay on the bed, he started to get up, and Pifer fired his taser at him. The police report states that Escott and Riney were part of the arrest team.  Trevino acknowledged in his deposition that Kelly was not present when he was tased.  But he said that it was Kelly who sent the officers to his house.

B.

Defendants Castleberry and Pifer filed a motion to dismiss, arguing that Castleberry is entitled to absolute immunity from suit and Pifer is entitled to qualified immunity.  They contend that Castleberry was acting as a prosecutor and therefore his actions are protected by prosecutorial immunity.  Pifer says that Trevino has not alleged any unconstitutional conduct by him concerning an unlawful arrest or use of excessive force.  Later, defendant Riney filed his motion for summary judgment arguing that (1) he was entitled to rely on a facially valid warrant when he participated in Trevino's arrest, (2) Trevino's guilty plea to the criminal sexual conduct charge estops him from

-6-

asserting that the arrest was made without probable cause, and (3) he cannot be guilty of excessive force because the undisputed facts show that the taser was fired by Pifer, not him.

C.

None of these underlying facts were discussed by the magistrate judge in her report.  She did not address the arguments raised by the defendants in their motion to dismiss.  Instead, the magistrate judge suggested that because the plaintiff had not alleged that his underlying conviction was not terminated in his favor, all of his claims — except the excessive force claim — were barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The excessive force claim against defendant Pifer failed, she concluded, because the plaintiff did not allege any conduct specifically attributed to defendant Pifer that amounted to excessive force.  She did not find any allegation that it was Pifer who deployed the taser.

II.

The plaintiff filed a timely objection to the report and recommendation.  He argues that the magistrate judge erred by not accepting the facts as he alleged them and by failing to draw all inferences in his favor.  Trevino argues that he was not resisting arrest when defendant Pifer deployed his taser.  And he notes that he was never charged with any form of resisting, obstructing, or opposing any police officer.  Furthermore, he argues that all of the other officers are liable because they had an opportunity to stop defendant Pifer, but failed to do so.  Trevino argues that the magistrate judge should have construed his pleadings liberally because he is proceeding *pro se*.  Additionally, he argues that the magistrate judge stated erroneously that all of the plaintiff's claims occurred on August 24, 2012, rather than on February 22, 2013.  He argues that this is important because he is objecting only to the dismissal of his excessive force claim.  He explains:

-7-

On February 22, 2013, Plaintiff Tim Trevino was at his home, sleeping in his bed, when members of the Michigan State Police's OMNI III Taskforce and the Blissfield Police Department barged into his home. When the officers went into the Plaintiff's bedroom, Trevino was laying on his back, sleeping next to his wife.  Within ten (10) seconds of entering the room, officer Jacob Pifer deployed his Taser XD in Trevino's chest, while he was still laying in bed. The other officers in the room did nothing to stop Pifer from using excessive force, and do not support any theory of Trevino resisting arrest.  At no time was Trevino resisting arrest, nor was he charged with any form of resisting, obstructing or opposing any of the officers.

Objs. at 1.

The filing of timely objections to a report and recommendation requires the Court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

## A.

The magistrate judge concluded that all but the plaintiff's excessive force claim were barred by *Heck v. Humphrey*.  In *Heck*, the Supreme Court held that a plaintiff seeking relief under 42 U.S.C. § 1983 cannot proceed on a claim when allowing her to do so would call into question the propriety of a prior criminal conviction that had not been set aside or expunged by judicial or executive action.  The Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Humphrey*, 512 U.S. at 86-87.  Discussing *Heck*'s reach, the Supreme Court has explained that the rule applies only to "a prisoner's § 1983 damages action [that] would implicitly question the validity of conviction or duration of sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam).  "*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Ibid.*

It is not readily apparent from the magistrate judge's report how the *Heck* rule would apply here.  There is no mention in the report of the crimes of which the plaintiff was convicted, and therefore no discussion of the elements of those crimes or how the claims presented in this lawsuit would call those elements into question.  Applying *Heck* requires that type of analysis, lest one fall into the mistaken mindset that all claims of constitutional violations that flow from an arrest and prosecution are barred "categorically" by that rule.  *See id.* at 754.

Trevino was convicted of criminal sexual conduct.  None of his claims call into question the validity of that conviction or the length of his sentence.  None of his claims would imply the invalidity of any of the underlying elements of that crime.  *Heck v. Humphrey* is not implicated.

The magistrate judge cited *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 378 (6th Cir. 2006), an unpublished appellate decision, for the idea that Trevino would have to have his convictions set aside before he could proceed on his claims.  In *Fox*, the plaintiff sued the police under section 1983 for unlawfully stopping him and searching his vehicle.  As a result of the search, Fox was charged with a variety of crimes, including possession of a switchblade knife.  The district court dismissed his case, citing, among other cases, *Heck v. Humphrey*.  On appeal, Fox did not

mention *Heck*, and the court of appeals said that he abandoned any argument based on that case. 173 F. App'x 372, 378. The court noted in *dictum* and without analysis that Fox's section 1983 suit could imply the invalidity of his switchblade conviction (but not the other convictions, which included domestic violence). That observation presumably was based on the premise that if the court declared illegal the search that yielded the switchblade, the validity of the conviction for possessing that weapon would be impugned. The main holding of the case, however, was that "Fox is estopped . . . from arguing that his arrest was made without probable cause because he pled guilty to the resulting offenses." *Id.* at 378 (citing *Walker v. Schaeffer,* 854 F.2d 138, 142–43 (6th Cir. 1988)).

      *Fox* does not support the magistrate judge's suggestion that *Heck* imposes a categorical bar against all of Trevino's non-excessive force claims. Trevino does not argue that he was arrested or searched absent probable cause. And he does not allege that there was evidence seized during any of the encounters that was introduced to support his criminal sexual conduct conviction.

## B.

      It appears from his objections that the plaintiff intends to leave in play only the excessive force claim. Defendant Castleberry challenges that claim on the basis of prosecutorial immunity. "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability." *Cooper v. Parrish,* 203 F.3d 937, 946 (6th Cir. 2000). A prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). The Sixth Circuit has held that a prosecutor enjoys immunity when acting as an advocate for the state, but not when he or she "performs the investigative

-10-

functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Cooper*, 203 F.3d at 947 (citations omitted).

The pleadings do not elaborate on Castleberry's role in Trevino's arrest. Based on the other documents of record, it appears that he did no more than advise the police and review and present the search warrant. The Sixth Circuit has explained that courts should employ a "functional approach" when evaluating a prosecutor's conduct in light of an immunity defense. *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011). "Absolutely protected acts of advocacy include those undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State. A prosecutor is thus absolutely protected when [he] appears in court in support of an application for a search warrant and presents evidence at a probable cause hearing, and when she prepares and files unsworn documents in order to obtain an arrest warrant. . . . *Ibid.* (quotation marks and citations omitted).

Assistant prosecutor Castleberry's function in this case was as a prosecutor. He is entitled to immunity from Trevino's lawsuit.

## C.

The magistrate judge found that Trevino's excessive force claims were not pleaded with sufficient specificity. It would not be hard to reach that conclusion, in light of the plaintiff's pleading missteps. The plaintiff did not repeat his original allegations in his amended complaints, and none of the amended complaints alone plead allegations against any particular defendant. An amended complaint supersedes an earlier-filed complaint "for all purposes." *In re Refrigerant*

-11-

*Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) (citing *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009)).

It appears, however, that the plaintiff intended his "amended" complaints to be in actuality "supplemental" complaints. The latter does not supersede — or replace — the original complaint; instead, it "deal[s] with events subsequent to the pleading to be altered and represent[s] additions to or continuations of the earlier pleadings." Charles Alan Wright, Arthur Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 1504 (3d ed. 1998). The primary purpose of the plaintiff's amended complaints was to provide newly discovered addresses for the defendants in order to effectuate service of process. The difference between amended and superseding complaints is a subtle one. And it has been repeated time and again that "*pro se* complaint[s are] . . . h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Because "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)), penalizing the plaintiff for his inaccurate nomenclature would be imprudent.

The initial complaint alleges that one of the defendants used excessive force by deploying a taser against the plaintiff who was not resisting arrest. The incident report makes clear that defendant Pifer was the defendant officer who deployed the taser. Although the magistrate judge did not have the benefit of the plaintiff's objection, the plaintiff distilled all of the information nicely in his objection. If the plaintiff were to file his objection fashioned as an amended complaint, together with other allegations required by Federal Rule of Civil Procedure 8, it likely would satisfy the pleading defects identified by the magistrate judge in her report.

-12-

Trevino made a good faith effort to comply with the Court's orders. He focused on what he perceived to be the primary defect with his submissions — the defendants' addresses. Nonetheless, there are a number of issues that remain in this case. First, it is not clear if the plaintiff intended to file claims against the Village of Blissfield. Second, it appears that John Doe 1-2 should be dismissed because the plaintiff identified them as defendants Riney and Escott. And finally, not all of the parties filed dispositive motions. Defendants Kelly and Escott have answered the first amended complaint, but they have not filed motions in this matter. However, the magistrate judge recommends granting the motion to dismiss by all defendants, even though not all of the defendants joined in that motion, nor could they once they filed their answers to the first amended complaint. *See* Fed. R. Civ. P 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). The remaining defendants who did file motions were Escott and Pifer.

### D.

Defendant Pifer argues that he is entitled to dismissal based on qualified immunity because the complaint does not allege that he violated the plaintiff's constitutional rights. As noted above, however, the plaintiff contends that it was Pifer who deployed the taser while the plaintiff was on his back in bed and not resisting.

The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). But that affirmative defense protects government actors performing discretionary functions from liability for civil damages only when their conduct does "not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quotation marks and citation omitted).

Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 680 (6th Cir. 2013)). The plaintiff must clear both hurdles, but the Court may take up the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abrogating in part *Saucier*, 533 U.S. at 201).

The qualified immunity defense may be raised at any stage of the case. When it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott v. Harris*, 550 U.S. 372, 378 (2007). That means that the court must view the facts in the light most favorable to the plaintiff, *Saucier*, 533 U.S. at 201; "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott*, 550 U.S. at 378. At the motion to dismiss stage, the Court accepts all of the plaintiff's well-pleaded allegations as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

As a general proposition, the Fourth Amendment protects all citizens from the use of excessive force — deadly or not — by law enforcement officers in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). When assessing the clarity with which the constitutional right

-14-

was established at the time of the officers' conduct, courts must guard against defining the right too broadly; instead, "[t]his inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  The Sixth Circuit has held, however, "that striking or shocking a non-resisting detainee violates the Fourth Amendment."  *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 566-67 (6th Cir. 2016) (citing *Thomas v. Plummer,* 489 F. App'x 116, 125-27 (6th Cir. 2012), and *Landis v. Baker,* 297 F. App'x 453, 462-63 (6th Cir. 2008)). The plaintiff has made allegations that could subject defendant Pifer to liability for violating the plaintiff's clearly-established constitutional rights, despite his claim of qualified immunity at this stage of the case.

## E.

As noted above, defendant Riney argues in his motion for summary judgment that although he participated in arresting Trevino, he did not tase him or engage in excessive force.  Trevino does not appear to dispute that, but he contends that Riney should have interceded to prevent Pifer from tasing him.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

In order to hold an individual officer liable for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). "As a general rule, mere presence . . ., without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). However, an individual officer may be held liable for failure to prevent the use of excessive force where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429. "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

The undisputed facts presented by defendant Riney, and unrebutted by the plaintiff, show that defendant Pifer acted quickly and spontaneously when he shot Trevino with his taser. There are no facts in the record from which a factfinder could infer that Riney knew of Pifer's intentions or that Riney was close enough to Pifer to prevent him from firing his single shot. The plaintiff has not made out a case of excessive force against defendant Riney, and Riney is entitled to a judgment in his favor as a matter of law. Fed. R. Civ. P. 56(a).

III.

After giving fresh review to the defendants' motions, and based on the allegations in the record, the plaintiff has stated a claim adequately against defendant Pifer for the use of excessive force in violation of the Fourth Amendment. More clarity, however, is called for.

-16-

The plaintiff will be allowed one more chance to file an amended complaint specifying the actions taken by each of the defendants remaining in this case, which would in turn notify those defendants of the allegations against which they need to defend, and make clear how the plaintiff would like to proceed.  The plaintiff has prosecuted his case diligently and probably to the best of his ability.  However, in the event that he does not file an amended complaint within the time allowed, the Court will dismiss the case for want of prosecution.

It does not appear that the plaintiff will be able to state a claim against defendant Castleberry, as he is immune from suit, based on his role in the events about which the plaintiff complains. Defendant Riney has made a showing that he is entitled to summary judgment of dismissal in his favor.

III.

Accordingly, it is **ORDERED** that the plaintiff's objections to the magistrate judge report and recommendation [dkt. #64] are **SUSTAINED IN PART**.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt. #63] is **REJECTED.**

It is further **ORDERED** that the defendant John Doe Riney's motion for summary judgment [dkt. #50] is **GRANTED**.

It is further **ORDERED** that defendant Burke Castleberry's motion to dismiss [dkt. #38] is **GRANTED** and defendant Jacob Pifer's motion to dismiss [dkt. #38] is **DENIED**.

It is further **ORDERED** that this case is **DISMISSED WITH PREJUDICE** against defendants Burke Castleberry and John Doe Riney, **ONLY**.

-17-

It is further **ORDERED** that the plaintiff must file a fourth amended complaint that explicitly specifies the actions taken by each of the remaining defendants and states the claim(s) he brings against each one individually.  The amended complaint must be filed **on or before May 1, 2017**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Stephanie Dawkins Davis under the previous reference order [dkt. #25] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 27, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 27, 2017.

s/Susan K Pinkowski
SUSAN K. PINKOWSKI

-18-