UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIM TREVINO,                                    Case No. 14-14376

               Plaintiff,                     David M. Lawson
v.                                              United States District Judge

JACOB PIFER,                                    Stephanie Dawkins Davis
                                                United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 79, 82)**

## I.    PROCEDURAL HISTORY

Plaintiff, a prisoner in the custody of the State of Michigan, filed this *pro se* civil rights complaint against a variety of government officials involved in his arrest and prosecution.  (Dkt. 1).[1]  District Judge David M. Lawson referred this matter to the undersigned for all pretrial proceedings.  (Dkt. 25).  Only the Fourth Amendment excessive force claim against defendant Jacob Pifer remains pending.  (*See* Dkt. 81).  On June 21, 2017, plaintiff filed a motion for summary judgment against Pifer on the issue of liability.  (Dkt. 79).  This motion is fully briefed.  (Dkt. 80, 83).  On July 7, 2017, Pifer filed a motion for summary judgment on plaintiff's excessive force claim.  (Dkt. 82).  Plaintiff filed a response, but Pifer did not file a

---

[1]  The operative complaint in this matter is plaintiff's fourth amended complaint, which can be found at Docket Entry 66.

reply.  (Dkt. 85).  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that both motions for summary judgment be **DENIED**.

## II.    FACTUAL BACKGROUND

According to the defendant, at approximately 3:30 PM on February 22, 2013, law enforcement officers, including defendant Pifer, arrived at 1640 Dorothy Avenue in Adrian, Michigan (plaintiff's residence) to execute an arrest warrant issued against plaintiff.  (Dkt. 80-2, Case Report, p. 3-4, Pg ID 736-737).  Officers Escott and Riney, accompanied by Pifer, knocked on the front door of the home.  Although no one answered the door, Escott heard a male voice inside the home— which the officers believed to be plaintiff's permanent residence.  Escott could not make out what was being said, but later heard someone running to the back of the home.  Officers checked the rear of the home and confirmed that no one had exited.  Pifer joined Escott and Riney in attempting to talk plaintiff out of the home, with no success.  The officers, in consultation with the prosecutor, decided to obtain a search warrant to enter the home and take plaintiff into custody.  *Id*.  Once inside the residence, according to Pifer's report, the officers announced their presence and purpose.  *Id*.  The report further explains that the officers observed plaintiff lying on his stomach pretending to sleep in the northwest bedroom of the home.  *Id*; (*see also*, Dkt. 82-1, Deposition Transcript of Plaintiff, p. 26, Pg ID 775).  According to Plaintiff, the bedroom is small—approximately 6 ft. x 8 ft.—with just enough room

for a bed.  *Id*.  Plaintiff began to rise from the bed and officers ordered him to lie back down and put his hands behind his back.  According to the report, plaintiff refused to comply and became verbally combative, telling officers to "[g]et the fuck out of [his] house."  (Dkt. 80-2, Pg ID 737).  Plaintiff placed one foot on the ground and the other knee on the bed.  Officers observed plaintiff clenching his fists. Plaintiff continued to ignore commands from Pifer and Riney.  Officers again ordered plaintiff to put his hands behind his head or he would be tasered.  Plaintiff began to move toward the officers.  *Id*.

Pifer states that out of a concern for officer safety in the event that a struggle ensued in the cramped bedroom, he then deployed his taser into plaintiff's chest. *Id*.  Once the taser completed its five second cycle, plaintiff placed his hands behind his back and officers took him into custody without further physical resistance, though he remained verbally combative.  *Id*.  Pifer offers the affidavit of Officer Thomas Riney, who accompanied him on the arrest, which he says corroborates the version of events reflected in his case report.  (Dkt. 80-3, Affidavit of Thomas Riney, Pg ID 740).  According to Riney's affidavit, Pifer did not taser plaintiff while he was lying down or prone; and only after plaintiff "took an aggressive posture and began to come toward law enforcement" did Pifer deploy his taser.  *Id*. at ¶ 9.

Plaintiff's version of events differs from the defendant's.  Plaintiff says he was at home, sleeping in bed with his wife, on the afternoon of February 22, 2013

when police executed a valid warrant on his home.  (Dkt. 79, Plaintiff's Affidavit, Pg ID 705, ¶¶ 5-7).  Plaintiff says that when the police officers entered his home, he was lying on his back sleeping, and his wife was between him and the police officers.  *Id*. at ¶¶ 9-10.  Plaintiff says that all of the officers were shouting different orders and within 10 seconds of their entry, defendant shot him in the chest with a taser gun.  (Dkt. 79, Pg ID 705-706, ¶¶ 11-13).  Plaintiff maintains that he never resisted, did not attempt to escape or reach for a weapon, and never stated he was armed.  Further, the officers found no gun in his bedroom.  (Dkt. 79, Pg ID 706, ¶¶ 14-18).  Plaintiff claims that he suffered grave emotional and mental injuries as a result of being tasered.  *Id*. at ¶ 20.

## III.  DISCUSSION

### A.  Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non- moving party. *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute

about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

    B.    <u>Qualified Immunity as to Excessive Force</u>

        1.    Legal Standards

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell*

*v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  Defendants bear the burden of pleading qualified immunity,

but plaintiff bears the burden of showing that the defendant's conduct violated a

right so clearly established that a reasonable official in his or her position would

have clearly understood that he or she was under an affirmative duty to refrain from

such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation

omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show

that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine

whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*,

533 U.S. 194, 201 (2001).  The first part of the test involves a determination of

whether the facts of the case, viewed in the light most favorable to the plaintiff,

"show the officer's conduct violated a constitutional right."  *Id*.  If the first question

was resolved in the affirmative, then the court would decide "whether the right was

clearly established."  *Id*.  If both questions were resolved in the affirmative, then the

doctrine of qualified immunity would not apply and the case could proceed.

The Supreme Court later revisited its formulation and discarded the

mandatory sequencing of the two-part qualified immunity test, finding that it was

no longer sound based on several factors, including judicial economy.  *Pearson v.

Callahan*, 555 U.S. 223, 227 (2009).  While leaving intact the factors that should be

considered in such a decision, the Court held that sometimes it makes sense to

decide the second part of the test first; and that such a decision may resolve the

controversy without having to address the first part of the test. *Id.*  In *Pearson*, the

plaintiff's § 1983 claim was based on an allegedly unlawful search conducted by

the defendant police officers.  Bypassing the perhaps more complicated inquiry of

whether plaintiff's constitutional rights had been violated, the Court found that the

constitutional right claimed by plaintiff was not clearly established.  Specifically,

the Court concluded that the conduct of the officers was consistent with lower court

case law, and "principles of qualified immunity [should] shield an officer from

personal liability when an officer reasonably believes that his or her conduct

complies with the law." *Id.* at 244-45.  "This generally means that 'we are free to

consider those questions in whatever order is appropriate in light of the issues

before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting

*Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the

contours of the right must be sufficiently clear such that a reasonable official would

understand that what he is doing violates that right. *Anderson v. Creighton*, 483

U.S. 635, 640 (1987).  "A clearly established constitutional violation requires on-

point, controlling authority or a robust consensus of cases of persuasive authority."

*Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir.

2013).  Without on-point authority, only in the most obvious of cases can an

official's conduct be held to have been clearly unlawful. *Sample v. Bailey*, 409

F.3d 689, 698-99 (6th Cir. 2005). "[C]laims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395-96). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).

Fortunately, the contours of the Fourth Amendment's prohibition on excessive force, and in particular, the use of a taser, are well-defined. Under long-standing case law in this circuit, "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who

9

already has been subdued and does not present a danger to himself or others."
*Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) (citing *Grawey v. Drury*,
567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that
officers cannot use force ... on a detainee who has been subdued" and "is not
resisting arrest."); *Bultema v. Benzie County*, 146 Fed. Appx. 28, 35, 37 (6th Cir.
2005) ("when a suspect has already been restrained, the officer's constitutional
authority to use force is significantly more circumscribed" and the "the gratuitous
use of force on a suspect who has already been subdued and placed in handcuffs is
unconstitutional.").  Defendant correctly observes that where an arrestee is non-
compliant and resisting arrest, the Sixth Circuit routinely finds the use of tasers
objectively reasonable.  *See e.g. Hagans v. Franklin Cnty.  Sheriff's Office*, 695
F.3d 505, 511 (6th Cir. 2012); *MacLeod v. Town of Brattleboro*, 548 Fed. Appx. 6,
8 (6th Cir. 2013) (using a taser once to avoid a "hands-on" confrontation and
subdue suspect who posed a real and imminent threat to the safety of officers and
bystanders was reasonable).  However, where an arrestee is not resisting, courts
typically find the use of a taser to be unreasonable.  *See e.g.*, *Kijowski v. City of
Niles*, 372 Fed. Appx. 595 (6th Cir. 2010).

     2.    Parties' Arguments

     Plaintiff maintains that there is no genuine dispute as to any material fact.  He
contends that Pifer shot him with the taser while he was lying in bed, he was not
resisting, and there is no evidence suggesting that plaintiff was doing anything but

lying in the bed when Pifer deployed the taser at him.  Plaintiff also points to Judge

Lawson's earlier decision (Dkt. 65) wherein he observed that the "undisputed facts

presented by defendant Riney, and unrebutted by the Plaintiff, show that defendant

Pifer acted quickly and spontaneously when he shot Trevino with his taser."  *Id*. at

Pg ID 557.  From that excerpt, plaintiff divines that Pifer is not entitled to qualified

immunity because Judge Lawson already concluded in that same order that the

"plaintiff has made allegations that could subject defendant Pifer to liability for

violating the plaintiff's clearly-established constitutional rights…"  *Id*. at Pg ID

556.  Plaintiff also asserts that the force was excessive because he was not actively

resisting or attempting to run away; and under applicable law, using a taser on a

non-resisting person is excessive force.  *Bennett v. Krakowski*, 671 F.3d 553, 561

(6th Cir. 2011).  According to plaintiff, Pifer's statement that he was resisting is

unsupported and "blatantly contradicted by the record."  To buttress his claim,

plaintiff also points out that he was never charged with the crime of resisting arrest.

Pifer argues that his use of his taser was objectively reasonable based on the

information available to him at the time.  Specifically, he contends that, when he

entered plaintiff's home, he knew the following:  (1) he was there to arrest plaintiff

on a three-count felony criminal sexual conduct warrant; (2) plaintiff was likely in

the home and intentionally avoiding making contact with officers; and (3) plaintiff

was found in a cramped bedroom within arm's reach of his ex-wife, an innocent

bystander.  With all of this information, out of an abundance of concern for officer

and bystander safety, and seeking to avoid a "hands-on" confrontation, Pifer says he deployed his taser to subdue plaintiff.

Pifer acknowledges that plaintiff offers a very different version of the events. He also acknowledges in his response to plaintiff's motion, that as a general rule, this factual dispute is enough to defeat plaintiff's motion. (Dkt. 80) (citing *Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015)). However, Pifer maintains that this case presents an exception to the general rule set forth in *Gradisher* regarding the availability of summary judgment in the face of a factual dispute such that summary judgment in favor of Defendant is appropriate. Specifically, Pifer points to *Scott v. Harris*, 550 U.S. 372 (2007), where the Supreme Court created an exception when the availability of qualified immunity turns on a disputed issue of material fact, and one side's version is "blatantly contradicted" and "so utterly discredited by the record that no reasonable jury could believe it." Pifer says that his version of events describing plaintiff as verbally combative, resisting arrest by failing to answer the door and failing to obey officer commands, as well as taking a physically aggressive stance toward officers is corroborated by Riney.

Pifer maintains that accepting plaintiff's version of events would require the jury to believe that, contrary to both his testimony and that of Riney, plaintiff was sleeping at 1:45 PM when officers first arrived; he did not hear them knocking and asking for him to exit the home; the officers forcibly entered the home and

12

proceeded to plaintiff's bedroom where Pifer said nothing and deployed his taser at plaintiff who was lying peacefully next to his ex-wife.  According to Pifer, plaintiff's version is far-fetched, blatantly contradicted and so discredited by the record that no reasonable jury could believe it.  Pifer argues that because plaintiff was verbally combative, took a physically aggressive stance and refused to follow the commands of law enforcement, Pifer's use of his taser for five seconds to subdue plaintiff was objectively reasonable and summary judgment in favor of Pifer is appropriate despite the fact that plaintiff provides a version of events at odds with the version proffered by Pifer and Riney.

Pifer also argues that even if he used excessive force during plaintiff's arrest, he reasonably believed he was acting in accordance with the law.  Again, Pifer emphasizes that when he entered plaintiff's home, he knew: (1) he was there to arrest plaintiff on a three-count felony criminal sexual conduct warrant; (2) plaintiff was likely in the home and intentionally avoiding making contact with officers; and (3) plaintiff was found in a cramped bedroom within arm's reach of his ex-wife, an innocent bystander.  With all of this information, out of an abundance of concern for officer and bystander safety and wanting to avoid a "hands-on" confrontation, defendant deployed his taser to subdue plaintiff.  Even if plaintiff had no intention of resisting arrest, Pifer asserts that his "belief that he might resist – thus posing a danger to officers and bystanders -- was reasonable in light of the facts known to him at the time."  Consequently, Pifer says that even if he used more force than was

absolutely necessary, he is still entitled to qualified immunity.

      3.      Analysis and Conclusion

Bearing in mind that the Courts must generally refrain from making any credibility determinations on a motion for summary judgment[2] and must view the evidence in the light most favorable to the non-moving party, there remain material questions of fact regarding whether plaintiff was actively resisting at the time Pifer used his taser and thus whether Pifer's use the force was justified. As explained in *Hermiz v. Budzynowski*, 2017 WL 2546793, *7 (E.D. Mich. June 13, 2017) (Lawson, J.), the Sixth Circuit has long "held that mere noncompliance is not active resistance." *Woodcock v. City of Bowling Green*, 2017 WL 633385, at *4 (6th Cir. Feb. 16, 2017) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323-24 (6th Cir. 2015) (holding that refusal to comply with an officer's command to step outside the apartment was not active resistance); *Eldridge v. City of Warren*, 533 Fed. Appx. 529, 535 (6th Cir. 2013) ("If there is a common thread to be found in our case law on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more.")). The court of appeals has "long distinguished active resistance by arrestees from passive resistance." *Jackson v.*

---

[2] In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court viewed a videotape of the incident in question and concluded that it would be impossible for a jury to find in plaintiff's favor. Here, there is no such undisputed or indisputable evidence and the Court is, therefore, prohibited from making any credibility judgment or weighing the evidence. *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

*Washtenaw County*, 678 Fed. Appx. 302, 306 (6th Cir. 2017) (citing *Goodwin v.*

*City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015)).  "The former can be

characterized by physical force, a show of force, or verbal hostility coupled with

failure to comply with police orders."  *Jackson*, 678 Fed. Appx. at 306 (citing

*Goodwin,* 781 F.3d at 323; *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015)).

 "The latter is generally shown by the lack of physical resistance or verbal

antagonism."  *Jackson*, 678 Fed. Appx. at 306 (citing *Austin v. Redford Twp. Police*

*Dep't*, 690 F.3d 490, 498 (6th Cir. 2012); *Eldridge*, 533 Fed. Appx. at 535).

As Pifer suggests in his response to plaintiff's motion for summary judgment,

the application of *Gradisher v. City of Akron* precludes summary judgment.  In

*Gradisher*, the Sixth Circuit reversed the district court's grant of summary

judgment to the defendant on the plaintiff's excessive force claim, finding a

material question of fact:

> The parties dispute whether or not Gradisher was
> resisting or refusing to be handcuffed.  The officers claim
> that Gradisher repeatedly pulled his arms back when they
> attempted to handcuff him.  They assert that Gradisher
> kept reaching his hands towards his waistband, possibly
> for a weapon, and would not comply with their
> commands to give up his arms both before and during the
> tasing.  Gradisher, conversely, says that when the officers
> pulled the sheet off of him, he held his hands up and his
> legs out, and said "You got me, You got me," yet they
> deployed the taser "[a]t that time."  He also claims that
> the officers gave no warning before immediately tasing
> him, and they continued to tase him even though he could
> not follow orders since he was incapacitated by the tasing.
>  Thus, whether Gradisher resisted or not and whether he

> was given an opportunity to comply with commands
> before, and while, being tased are material facts in
> dispute.  "Where, as here, the legal question of qualified
> immunity turns upon which version of the facts one
> accepts, the jury, not the judge, must determine liability."
> *Sova* [*v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir.
> 1998)].

*Id*. at 585-86.  The facts in this case are difficult to distinguish from those in

*Gradisher*.  Here, if a jury accepts plaintiff's version of events, that he was not

actively resisting and that he was shot with a taser within seconds of the officers'

entry into his bedroom, the jury could reasonably find that the use of the taser was

excessive force.  Conversely, if a jury accepts Pifer's version of events, that

plaintiff was verbally resisting and advancing towards officers, it could reasonably

find that the force used was not excessive.  Given that material facts are in dispute,

the Court cannot decide qualified immunity as a question of law.  *Harris v. City of

Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) ("When no facts are in dispute,

whether an official receives qualified immunity is a question of law.").

Thus, summary judgment in either party's favor should be denied.

Furthermore, contrary to Pifer's arguments, the Court is not presented with

the exceedingly rare *Scott v. Harris* situation.  In *Scott*, the Supreme Court created

an exception to the standard that a defendant challenging a denial of qualified

immunity on interlocutory appeal "must be willing to concede the facts as alleged

by the plaintiff and discuss only the legal issues raised by the case."  *Landis v.

Phalen*, 297 Fed. Appx. 400, 404 (6th Cir. 2008) (quoting *LeMarbe v. Wisneski*,

266 F.3d 429, 435 (6th Cir. 2001)).  In *Scott*, the Supreme Court held that where a

district court's denial of qualified immunity turns on a disputed issue of material

fact and one side's version of those facts is "blatantly contradicted by the record, so

that no reasonable jury could believe it a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at

380.  *Scott's* exception, however, applies only to the "rare" case at the "outer limit"

where a district court makes a "blatan[t] and demonstrabl[e] error."  *Landis*, at

*Wysong v. City of Heath*, 260 Fed. Appx. 848, 853 (6th Cir. 2008) (quoting in part

*Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007)) In *Scott*, the

video evidence was indisputable.  The video evidence showed, contrary to the

respondent's version of events, his "vehicle racing down narrow, two-lane roads in

the dead of night at speeds that are shockingly fast," "swerve[ing] around more than

a dozen other cars, cross[ing] the double-yellow line, and forc[ing] cars traveling in

both directions to their respective shoulders to avoid being hit."  The video also

showed the vehicle running "multiple red lights and travel for considerable periods

of time in the occasional center left-turn-only lane, chased by numerous police cars

forced to engage in the same hazardous maneuvers just to keep up."  The Supreme

Court described the events on the video as a "Hollywood-style car chase of the most

frightening sort, placing police officers and innocent bystanders alike at great risk

of serious injury."  *Id*. at 379-80.  As a result, the respondent's version of events

was irredeemably rebutted and contradicted.  Therefore, the Court concluded that

the "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him."  *Id.* at 380.

Notably, not even all video evidence automatically triggers this exception. Indeed, in other circumstances where there is video evidence of part of the incident in question, *Scott v. Harris* has been deemed inapplicable.  Compare *Hermiz v. Budzynowski*, (partial video of tasing and use of other force, question of fact found), with *Banks v. Twardesky*, 2011 WL 891193, at *5 (E.D. Mich. 2011) (Hluchaniuk, M.J.), report and recommendation adopted, 2011 WL 891181 (E.D. Mich. 2011) (Duggan, J.) (No factual issue found where entire incident captured on the videotape and it was plainly evident that plaintiff was not subdued and had not stopped resisting at the time the pepper spray was administered).  Accordingly, it would be inappropriate to extend the reach of *Scott v. Harris* to a factual scenario where there is no videotape of the incident in question.  *See also Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (explaining that *Scott* "instructs us to determine as a matter of law whether the events depicted on [a] video, taken in the light most favorable to [the nonmoving party], show that the Officers' conduct was objectively reasonable.").  Where claimed "material issues of fact" are plainly contradicted by the video evidence of events in question, summary judgment may be granted in favor of defendants.  *See e.g.*, *Griffin v. Hardrick*, 604 F.3d 949, 955-56 (6th Cir. 2010).

Lastly, the undersigned is not convinced that Pifer is entitled to qualified

immunity even if he used excessive force during his arrest of plaintiff because he reasonably believed he was acting in accordance with the law.  Pifer relies on *Saucier* for the proposition that he is still entitled to qualified immunity even if the force used was excessive because he was reasonably mistaken regarding the appropriate amount of force necessary.  A similar argument was rejected by the Court in *Harris v. Lasseigne*, 2013 WL 6537805, at *7 (E.D. Mich. Dec. 13, 2013) (Steeh, J.), aff'd in part, dismissed in part, 602 Fed. Appx. 218 (6th Cir. 2015).  In *Harris v. Lasseigne*, the defendant argued that even if he was mistaken that the decedent had dropped or thrown his weapon just moments before the defendant shot him, the mistake was honest and reasonable under the circumstances.  *Id*.  The Court found that the issue would come down to whether the gun held by the decedent went over the fence before or after he was shot by the defendant, which was dependent on which version of the facts were accepted.  *Id*.  The Court concluded that, while it was a close case, the evidence considered in the light most favorable to the plaintiff could lead a factfinder to conclude that the decedent was not armed when he was shot.  *Id*.  Thus, it was "up to the jury to determine the sequence of events, interpret the evidence, and assess the accuracy and credibility of the various witnesses' testimony about what happened."  *Id*.

Moreover, the facts of this case are unlike those where a reasonable mistake of fact is at issue.  For example, in *Simmonds v. Genesee County*, 682 F.3d 438 (6th Cir. 2012), the court found qualified immunity applied where the totality of the

circumstances as known to the defendants at the time, warranted the use of deadly

force:

> The officers were aware that Kevin [the decedent] had
> threatened to kill his ex-girlfriend's parents, as both
> Simmonds and Carey separately called 911 to report these
> threats.  The officers were further informed that Kevin
> had been drinking, was displaying mentally unstable
> behaviors, and was possibly suicidal.  They also knew
> that Kevin owned a pistol and a shotgun and that he might
> be armed.  Once the officers came into contact with
> Kevin, he refused to comply with their request to raise his
> hands and exit his truck, and instead shifted the truck into
> reverse and fled into a heavily-wooded area of his parent's
> property.  After Kevin's vehicle became stuck in the
> snow, he again ignored repeated orders to show his hands
> and, even after officers attempted to use a taser to subdue
> him, threatened the officers by yelling "I have a gun," and
> brandishing a silver object, and pointing it at the officers,
> as if it were a weapon.  Although 20/20 hindsight now
> informs us that Kevin was unarmed at the time, all of the
> information available to the officers at the time they used
> force constituted probable cause that Kevin "pose[d] a
> threat of serious physical harm...."

*Id*. at 445.  Importantly, there was no evidence contradicting the officer's assertion

that the decedent in *Simmonds* brandished a silver object or yelled that he had a

gun.  Rather, the "mistake" was that it turned out that the decedent was unarmed.

Yet, the officers reasonably believe that the decedent was armed and posed a

serious threat.  In contrast, Pifer does not identify any facts that he reasonably

believed to justify his use of force, which turned out not to be true.  Rather, the

parties have presented differing sets of facts, which still must be sorted out by a

jury.  Thus, there does not appear to be a reasonable mistake of fact issue before the

20

Court suggesting that summary judgment in favor of Pifer is appropriate.

Finally, as to plaintiff's argument for summary judgment, the undersigned is not persuaded that Judge Lawson's statement in Dkt. 65 – that the "undisputed facts presented by defendant Riney, and unrebutted by the Plaintiff, show that defendant Pifer acted quickly and spontaneously when he shot Trevino with his taser" – was intended to be a holding that Pifer is not entitled to qualified immunity. *Id*. at Pg ID 557. As explained above, plaintiff suggests that Pifer is not entitled to qualified immunity because Judge Lawson already concluded in that same order that the "plaintiff has made allegations that could subject defendant Pifer to liability for violating the plaintiff's clearly-established constitutional rights…" *Id*. at Pg ID 556. The undersigned finds no binding conclusion of fact or law in Judge Lawson's order such that plaintiff is entitled to summary judgment. Rather, Judge Lawson determined that Pifer *could* be subject to liability, not that he was, in fact, liable. Indeed, had Judge Lawson already made such a determination, this matter would not have required further pretrial proceedings. Thus, nothing in the prior order suggests that plaintiff is entitled to summary judgment as a matter of law or that there are no material factual disputes.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that both motions for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 22, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on January 22, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: Tim Trevino #190370, Lenawee Development Corporation, 227 N. Winter Street, Suite 100, Adrian, MI 49221.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov